**NIKE, INC., an Oregon corporation, Plaintiff,**

v.

**WOLVERINE WORLD WIDE INC., a Delaware corporation, Brooks Shoe Inc., and Brooks Sports, Inc., Defendants.**

**Civ. No. 93–125–MA.**

United States District Court, D. Oregon.

Oct. 25, 1993.

Don Marmaduke, Peter Koehler, Jr., Tonkon, Torp, Galen, Marmaduke & Booth, Portland, OR, David Anderson, James Sobieraj, Timothy Q. Delaney, Earl M. Douglas, Willian Brinks Olds Hofer Gilson & Lione, Chicago, IL, for plaintiff.

Jonathan Hoffman, Laura Van Harlingen Potter, Martin, Bischoff, Templeton, Langslet & Hoffman, Portland, OR, Ernie Brooks, John Nemazi, Paul Schwartz, Brooks & Kushman, P.C., Southfield, MI, for defendants.

## OPINION

MARSH, District Judge.

Plaintiff filed this action against defendants for patent infringement. Plaintiff contends that defendants have manufactured and sold athletic shoes which embody their '304 patent "FOOTWEAR WITH AD-

JUSTABLE VISCOELASTIC UNIT."[1] Defendants manufactured the accused shoes under Patent No. 4,934,072 (hereinafter "'072") issued to Ray Frederickson on June 19, 1990. Specifically, plaintiff challenges defendants' use of a "Hydroflow" unit—a sealed heal cushion or "bladder" containing liquid and air. Defendants now move for summary judgment on the issue of infringement on the basis that their sole inserts are filled (80–90%) with liquid and thus, are not "inflated" as required by plaintiff's '304 patent. Plaintiff seeks partial summary judgment on the issue of claim construction.

## STANDARDS

Summary judgment is appropriate if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989).

## DISCUSSION

■ A claim of patent infringement involves two distinct inquiries: (1) the scope of the plaintiff's claims; and (2) whether the claims have been infringed. *McGill Inc. v. John Zink Co.,* 736 F.2d 666, 671 (Fed.Cir. 1984), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984).[2] The first inquiry is a question of law which may be interpreted by a district court as a matter of law if the language of the claims is undisputed. *Id, citing Singer Manufacturing Co. v. Cramer,* 192 U.S. 265, 275, 24 S.Ct. 291, 295, 48 L.Ed. 437 (1904); *see also Intellicall, Inc.*

*v. Phonometrics, Inc.,* 952 F.2d 1384, 1387 (Fed.Cir.1992) (claim interpretation is "amenable" to summary judgment). A dispute over the meaning of a term does not itself create an issue of fact even if the court must determine the meaning of a term by reference to the patent file or other extrinsic evidence. *Johnston,* 885 F.2d at 1579. For example, in *Johnston,* the court found that although there was a dispute about the meaning of the term "inscribe" as used in relation to a thermometer cover, the court found it could only "properly interpret" the claim in one way. *Id.* Similarly, in *Intellicall* the court held that an inventor's subjective intent regarding meaning of term "digital display" was insufficient to defeat summary judgment where his definition (which included machine readable displays as well as human readable displays) was inconsistent with understanding of those skilled in the art (human readable). 952 F.2d at 1387.

Both parties agree that there are no underlying factual disputes in this case and that even though the definition of the term "inflated" is disputed, the issue of claim construction is ripe for judicial determination at this time.

■ Claim construction involves examination of several factors including: (1) the file history—the file wrapper and prosecution history in the Patent Office; (2) the patent specification; (3) the use of other dependent claims in the patent; and (4) expert testimony by those "skilled in the art." *Id.,* at 673–75.

■ Terms of a claim will be given their "ordinary meaning" unless it appears that the inventor used them differently. *ZMI Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1581 (Fed.Cir.1988). The ordinary meaning is not dispositive however, and

1. United States Patent No. 4,817,304 (hereinafter "'304") was issued to Mark Parker, David Forland, Lester Lee, Thomas McGuirck, Daniel Potter and Stephen Potter on April 4, 1989. Nike owns the '304 patent and produces its "AirMax" line of shoes under this patent.

2. A claim of literal infringement requires that every limitation set forth in a patent holder's claim must be found "exactly" in the accused

product. *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1577 (Fed.Cir.1989). "Mere assertion of similarity in the accused and patented devices is insufficient to create a factual issue for trial." *Id,* at 1578. Additional structures or elements in the *accused* device (such as the liquid) may be disregarded in the infringement analysis. *Becton Dickinson and Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 797 (Fed.Cir.1990).

the court must look to the other factors (file history, etc.) to determine if the inventor used terms differently than their ordinary meaning. *Id.* The inventor's own description of a term within the patent itself may refine or re-define a word from what those ordinarily skilled in the art might interpret *if* the inventor makes his meaning clear. *Intellicall,* 952 F.2d at 1387; and *Lear Siegler, Inc. v. Aeroquip Corp.,* 733 F.2d 881, 888–89 (Fed.Cir.1984) (inventor may be his own lexicographer if meaning is clear and consistent within the patent disclosure). This rule of construction was designed to protect an inventor not schooled in the terminology of the art to which her invention pertains or "where there is a need to coin new expressions." *Id.*

■ Although expert testimony may be used in claim construction, *see, e.g. Fonar v. J & J,* 821 F.2d 627, 631 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 751, 98 L.Ed.2d 764 (1988), courts typically treat expert and inventor testimony with a certain degree of skepticism. Thus, an expert's construction of a claim term, standing alone, may not constitute "substantial evidence" sufficient to survive a motion for judgment notwithstanding the verdict. *See Id.,* at 675 (reversing district court's denial of JNOV motion finding insufficient evidence even though expert testimony supported jury finding); and *Johnston,* 885 F.2d at 1578 (Fed. Cir.1989) (expert who referenced a model not in dispute and who made conclusory statement regarding infringement failed to raise genuine issue to preclude summary judgment).

Similarly, an inventor's "litigation-produced" announcement of the intended meaning of a patent term has been deemed to have "no effect" on the actual words as used in a document. *Lear,* 733 F.2d at 889 (inventor attempting to explain non-obviousness). For example, in *Senmed, Inc. v. Richard–Allan Medical Industries,* 888 F.2d 815, 821 (Fed.Cir.1989) the court held that where the patent described staple "above" an anvil, the inventor could not argue staple was meant to be "on" anvil surface.

■ Thus, the language of the claim, the file history and patent specification are the most critical factors to focus upon in analyzing claim construction. *See e.g. Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 452 (Fed.Cir.1985).

■ The pertinent provisions of plaintiff's '304 patent claim the following:

"Footwear comprising an upper, **a sole member including a sealed inner member of flexible material, said inner member being inflated** with a gaseous medium to form a complaint and resilient insert having spaced upper, lower, front, back and side surfaces, an elastomeric yieldable outer member encapsulating said insert about preselected portion of said insert, said preselected portion including a major portion of at least said upper or lower surface and a portion of said side surfaces, said inner and outer members functioning together to form a viscoelastic unit for attenuating shock and returning energy of foot impact."

'304 Patent, Claims 1, 18 and 23 (emphasis added). Thus, the pertinent provisions of plaintiff's claims include: (1) a sealed inner member of flexible material; (2) inflated with a gaseous medium.

The pertinent provisions of defendants' '072 patent claim are as follows:

"A shock responsive heel structure for footwear comprising:

a bladder having an upper wall, a lower wall spaced from said upper and lower walls, including a medial side wall and a lateral side wall connected by a front wall and merging into a curvilinear rear wall, said wall defining a sealed spaced therebetween;

\*　\*　\*　\*　\*　\*

a viscous liquid and ga (sic) mixture filling said chambers ... wherein said viscous liquid and gas mixture comprises 80 to 90 percent viscous liquid and 20 to 10 percent gas."

Defendant's '072 Patent, Claims 1 and 8.[3]

Like plaintiff's '304 patent, defendants' patent clearly includes a sealed inner mem-

---

**3.** Defendants' heel insert also requires a diagonál

interior control wall which divides the space into

ber. Thus, to state a claim of infringement, defendants' '072 patent must also be "inflated with a gaseous medium."

Defendants concede that their sole inserts include 10–20% ambient air, but deny that leaving in such an air bubble to facilitate the flow of a liquid constitutes an "inflation," as required by the '304 patent.

Plaintiff contends that defendants' attempt to impose a limitation on the term "inflate" would require that the inserts be filled with a gas "above atmospheric pressure." Nike correctly notes that the '304 patent contains no specific atmospheric pressure limitation. Nike argues that when the "proper" definition of the term "inflate" is used, the record demonstrates that the accused shoes are "inflated" because they contain air. Nike further argues that its use of the term "inflated" within the claim is as an *adjective* rather than as a verb—**"said inner member being inflated,"** so that active pumping of air or gas into the bladder would not be required and all that it needed is the presence of an air or gas.

My analysis of the disputed claim interpretation begins with the ordinary meaning of the term "inflate." The dictionary defines the adjective "inflated" as "swollen or distended with gas or air; puffed out." Webster's New 20th Century Dictionary of The English Language, p. 939 (1967). The dictionary defines "swollen" as an "increase in size or volume due to internal pressure: expand." The term "distend" is defined as "to swell out or expand from or as if from internal pressure."

While the claim specification, "inflated with a gaseous medium," reveals nothing about a specific pressure level or pumping process, conversely it fails to further define or refine the definition of the term "inflated." For example, no reference is made to sealed inner members which "contain" or "trap" air.

Prior art (most of which is incorporated by reference into Nike's '304 patent) does in fact described active pumping of air or gas to certain pressures. The Rudy '156 patent

refers to "supergases" and preferred pressure of 2 psi to 50 psi depending upon the shoes' intended use. Defendants' Exhibit T. Nike refers to the Rudy '156 patent as the "preferred" embodiment for the purposes of selecting bladder material and types of gasses. Plaintiff's actual shoe production, consistent with prior art teachings, involves intentional pumping of air and/or gasses into the shoe bladder.

Based upon the foregoing, I find that the claim properly construed requires that the insert be pumped, swollen or distended with a gaseous medium and that "inflated" would not include air which is merely contained or trapped. To adopt Nike's asserted definition would alter the ordinary meaning of the term "inflated" in the absence of any evidence that such a result was intended by the inventors. Further, the technology involved is not so complex as to necessitate a reference to experts in the field. Here, just as in *Senmed,* the claim language, specification and prosecution history "belie the claim interpretation asserted" by plaintiff. *Senmed,* 888 F.2d at 819.

The second inquiry in determining patent infringement—whether the claims have been infringed—may be addressed either by finding every limitation set forth in an accused product exactly or by a substantial equivalent. *Becton,* 922 F.2d at 796. Once the claims are properly construed by the court, the trier of fact ordinarily must decide the second inquiry as to whether the claims cover the accused device. *Palumbo v. Don–Joy,* 762 F.2d 969, 974 (Fed.Cir.1985). If any claim limitation cannot be found in the accused shoe sole, the claim is not literally infringed. *Johnston,* 885 F.2d at 1577–78. In this case, plaintiff failed to come forward with any evidence to show that if I construed the claims in a manner consistent with defendants' assertion, any factual issues remained for a jury. Based upon the record, I find that once the claims are properly construed, no reasonable jury could find defendants' Hydroflow inserts infringe plaintiff's '304 patent.

front and rear heel chambers, with the rear heel chamber having a greater volume than the front

heel chamber.

## CONCLUSION

Based on the foregoing, I find that no genuine issues of material fact exist and that defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment (# 62) is GRANTED, and plaintiff's motion for partial summary judgment (# 81) is DENIED. Because defendants' counterclaims were not addressed in the summary judgment motions, this opinion does not close the action.

