NIKE INCORPORATED,
Plaintiff–Appellant,

v.

WOLVERINE WORLD WIDE, INC.,
Brooks Shoe, Inc., and Brooks Sports,
Inc., Defendants–Appellees.

No. 94–1181.

United States Court of Appeals,
Federal Circuit.

Dec. 5, 1994.

David A. Anderson, Willian Brinks Hofer Gilson & Lione, Chicago, IL, argued, for plaintiff-appellant. With him on the brief, were James R. Sobieraj, Timothy Q. DeLaney, Earl M. Douglas and Dominic P. Zan-Fardino.

Ernie L. Brooks, Brooks & Kushman, P.C., Southfield, MI, argued, for defendants-appellees. With him on the brief, were John M. Halan and John E. Nemazi. Of counsel was Frank A. Angileri.

Before MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

Nike Inc. ("Nike") appeals from an order of the United States District Court for the District of Oregon granting the motion of

Wolverine World Wide, Inc., Brooks Shoe, Inc., and Brooks Sports, Inc. (collectively "Wolverine") for summary judgment of non-infringement of U.S. Patent 4,817,304. *Nike Inc. v. Wolverine World Wide, Inc.*, 869 F.Supp. 808 (D.Or.1993) ("*Nike*"). Nike also appeals from the district court's order granting Wolverine's motion precluding Nike from pursuing a claim of infringement under the doctrine of equivalents. *Nike Inc. v. Wolverine World Wide, Inc.*, No. 93–125–MA (D.Or. Oct. 18, 1993). We affirm.

## BACKGROUND

Nike is the assignee of the '304 patent, which is directed to a shoe having an improved cushioning sole structure. Claim 1 of the patent is representative of the claims at issue and reads, in relevant part, as follows:

> Footwear comprising an upper, a sole member attached to said upper, said sole member including a sealed inner member of flexible material, *said inner member being inflated with a gaseous medium* to form a compliant and resilient insert having spaced upper, lower, front, back and side surfaces, an elastomeric yieldable outer member encapsulating said insert about preselected portions of said insert, said preselected portions including a major portion of at least said upper or lower surface and a portion of said side surfaces, said inner and outer members functioning together to form a viscoelastic unit for attenuating shock and returning energy of foot impact. (emphasis added)

On February 2, 1993, Nike sued Wolverine for infringement of the '304 patent. Wolverine manufactures shoes that include a heel insert containing 80–90% viscous silicone liquid and the remainder air at ambient pressure. On August 6, 1993, Wolverine moved for summary judgment of non-infringement on the ground that the heel inserts used in its shoes are not "inflated with a gaseous medium," as required by the claims. Nike cross-moved for partial summary judgment "that the accused Brooks Hydroflow shoes include a 'sealed inner member' that is 'inflated with a gaseous medium'." On September 14, 1993, Wolverine moved, pursuant to Fed.R.Civ.P. 37, to bar Nike from pursuing a claim of infringement under the doctrine of equivalents because Nike had not clearly indicated the basis for that claim or provided discovery on the issue.

The district court granted Wolverine's motion and denied Nike's cross-motion, concluding that no reasonable jury could find that Wolverine's shoes literally infringe the '304 patent. The court also granted Wolverine's motion to preclude Nike from asserting a claim of infringement under the doctrine of equivalents. Nike now appeals.

## DISCUSSION

Nike first challenges the district court's grant of summary judgment of non-infringement. Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir.1989). In other words, summary judgment may be granted when no "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We review *de novo* a district court's grant of summary judgment. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994).

Determining whether a patent claim is infringed requires a two-step analysis: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mechanical Sys.*, 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). Claim construction is a question of law, which we review *de novo*. *Id.* at 1577, 27 USPQ2d at 1839. In construing a claim, claim terms are given their ordinary and accustomed meaning unless examination of the specification, prosecution history, and other claims indicates that the inventor intended otherwise. *See id.*, at 1577, 27 USPQ2d at 1840.

■ Nike argues that the district court misconstrued the claims of the '304 patent and thus erred in granting summary judgment of non-infringement. Specifically, Nike contends that, properly interpreted, the recited "inner member ... inflated with a gaseous medium" encompasses a heel insert *containing* gas at ambient pressure. We disagree.

The district court analyzed the claim language, patent specification, prosecution history, and prior art, and found no support for Nike's assertion that the claim limitation "inflated with a gaseous medium" means "containing" a gas at ambient pressure. Rather, because the specification and file history of the '304 patent do not define the term "inflated," the court first looked to the word's common meaning: "swollen or distended with gas or air; puffed out." *Webster's New Twentieth Century Dictionary of the English Language* 939 (2d ed. 1967). The court further noted that, according to *Webster's*, "swollen" means an "increase in size or volume due to internal pressure," and "distend" means "to swell out or expand from or as if from internal pressure." *Nike*, 869 F.Supp. at 812.

Further, as the court recognized, the '304 patent states that preferred materials and gases for use in the recited insert are described in U.S. Patents 4,183,156 and 4,219,-945 to Rudy, which were incorporated by reference into the '304 patent. Col. 2, 11. 30–56 and col. 4, 11. 42–47 of the '304 patent. According to the '304 patent:

> The sole structure disclosed in the '156 and '945 Rudy patents overcame the unreliability obstacle through the use of a novel membrane and gas combination. The sole structure in the '156 and '945 patents forms an inflatable insert or insole barrier member of an elastomer material having a multiplicity of preferably intercommunicating, fluid-containing chambers *inflated to a relatively high pressure by a gas* having a

> low diffusion rate through the barrier members ... *the pressure remaining at or above its initial value over a period of years.*

Col. 2, 11. 44–56 (emphasis added).

Thus, the '304 specification suggests using an insert that is inflated with gas to a "relatively high pressure."[1] In fact, there is nothing in the '304 patent or its prosecution history to suggest that the term "inflated with a gaseous medium" was intended to encompass an insert containing gas at ambient pressure.

The district court determined that "the claim properly construed requires that the insert be pumped, swollen or distended with a gaseous medium and that 'inflated' would not include air which is merely contained or trapped." *Nike*, 869 F.Supp. at 812. We agree with the court's analysis, which is supported by the '304 patent specification, the Rudy patents referenced therein, and the plain meaning of the term "inflated." The court correctly rejected Nike's proposed claim construction. Nike cannot, in effect, rewrite its patent claims to suit its needs in this litigation.

Because Wolverine's shoes contain air at ambient pressure and are not "inflated" with air under pressure, we conclude that no reasonable jury could have found that Wolverine's shoes literally infringed any claim of the '304 patent. *See Johnston*, 885 F.2d at 1580, 12 USPQ2d at 1386 ("Where a claim does not read on an accused device exactly, there can be no literal infringement."). Thus, the district court properly granted summary judgment of non-infringement.

■ Nike also challenges the district court's October 18, 1993 order pursuant to Fed.R.Civ.P. 37[2] granting Wolverine's motion to preclude Nike from pursuing a claim of infringement under the doctrine of equivalents. We apply the law of the pertinent

---

1. The '156 Rudy patent, incorporated by reference into the '304 patent, teaches specific air pressures of 2 to 50 psig depending on the shoes' intended use.

2. Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes sanctions against a party

who "fails to obey an order to provide or permit discovery." One potential sanction is an "order refusing to allow the disobedient party to support ... designated claims ... or prohibiting that party from introducing designated matters into evidence." Fed.R.Civ.P. 37(b)(2)(B).

regional circuit when the issue to be addressed involves an interpretation of the Federal Rules of Civil Procedure not unique to patent law. *See Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed.Cir.1984); *Refac Int'l, Ltd. v. Hitachi, Ltd.,* 921 F.2d 1247, 1253–56, 16 USPQ2d 1347, 1352–54 (Fed.Cir.1990) (applying Ninth Circuit law to a Rule 37 dispute). In accordance with Ninth Circuit law, we review the district court's Rule 37 sanction for an abuse of discretion and will not reverse absent a definite and firm conviction that the court made a clear error of judgment. *Halaco Eng'g Co. v. Costle,* 843 F.2d 376, 379 (9th Cir.1988). The district court's determination that Nike disobeyed a discovery order is entitled to considerable weight because the district court judge is best equipped to assess the circumstances of the non-compliance. *See id.; United States v. National Medical Enters., Inc.,* 792 F.2d 906, 911 (9th Cir.1986).

■ At an April 21, 1993 pretrial conference, the district court ordered Nike and Wolverine to provide each other with full disclosure in response to requests for discovery. The court imposed on both Nike and Wolverine "a duty to respond with everything that you have that is responsive to a reasonable request." In no uncertain terms, the court advised the parties that "if you do not fully respond and you come up with documentation later on which was responsive to that request, you will not be able to use it at trial." The court set a discovery cut-off date of August 20, 1993.

Pursuant to the court's discovery order, Wolverine requested claim charts identifying how the claims of the '304 patent allegedly read on the accused shoes, and took the deposition of a Rule 30(b)(6) Nike representative seeking Nike's theory of infringement. At the deposition, the designated Nike witness, Daniel R. Potter, denied that Nike was asserting a claim of infringement under the doctrine of equivalents. Nike then sent Wolverine a letter stating that "NIKE has not made any contention that defendants have infringed the '304 patent under the doctrine of equivalents." Hedging Nike's position, however, the letter further asserted that "[w]hether or not NIKE will make such a contention in the future is dependent on the results of an investigation being conducted by NIKE's technical expert."

Discovery closed on August 20, 1993 without further disclosure by Nike concerning allegations of infringement based on the doctrine of equivalents. Accordingly, on September 14, 1993, Wolverine moved for an order under Rule 37 limiting Nike to its assertion of literal infringement. The district court granted the motion on October 18, 1993.

■ Nike argues that it never violated a discovery order and thus the district court's sanction is inappropriate. We disagree. At the April 21, 1993 pretrial conference, the district court orally instructed both parties to provide full disclosure in response to requests for discovery. An oral order can provide the requisite basis for a Rule 37 sanction, and, with regard to any potential equivalents claim, Nike violated that order. *See Henry v. Sneiders,* 490 F.2d 315, 318 (9th Cir.) (upholding default judgment based upon an oral order to produce documents), *cert. denied,* 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974). The court clearly put Nike on notice that if Nike did not fully disclose its infringement contentions, Nike would be precluded from using the undisclosed information at trial. Nike never disclosed a factual basis for asserting the doctrine of equivalents. Instead, Nike took the position that it had not "yet" asserted the doctrine of equivalents, but that it might do so "in the future" depending on the results of tests to be performed by its expert. Nike waited until after the August 20, 1993 close of discovery before *beginning* testing to investigate whether it could prove infringement under the doctrine of equivalents. In a declaration dated August 31, 1993, Nike's counsel stated that Nike's expert had not yet decided precisely what tests to run, but that he would run tests within the next month to determine "whether or not the facts support infringement under the doctrine of equivalents."

We reject Nike's suggestion that its own delay should excuse it from the court's sanction. Wolverine began manufacturing the accused shoes in 1989. Nike filed suit in

February 1993; thus, Nike had over three years to investigate the merits of a possible doctrine of equivalents case. If Nike needed more time to substantiate its infringement claim, it could have delayed filing suit until its factual investigation was completed or requested more time for discovery. The gravamen of Nike's argument is that it did not violate a discovery order because it gave Wolverine everything it had at the time concerning a potential doctrine of equivalents case, even though what it had amounted to nothing. While failing to provide what it did not have may not seem to be a violation of an order, the sanction of precluding the pursuit of an unsupported claim was clearly appropriate here because the trial court had the right to manage its docket and require the parties to support their claims or drop them.

Nike also argues that the district court erred because it "set aside" the Federal Rules of Civil Procedure. Nike did not object to the court's discovery plan. Rather, Nike submitted written discovery requests to Wolverine in accordance with the court's plan. Nike later relied on Rule 37 in its own motion to compel discovery. Further, in responding to Wolverine's motion to compel discovery, Nike did not assert that the discovery rules had been set aside but instead responded substantively to the discovery issues raised and asked the court for costs in accordance with Rule 37. Because Nike never objected to the court's discovery procedures, Nike waived any valid objection that it may have had.

Thus, giving "considerable weight" to the court's finding that Nike violated a discovery order, *Halaco,* 843 F.2d at 379, we conclude that the district court did not abuse its discretion in sanctioning Nike for failing to provide discovery on the issue of infringement under the doctrine of equivalents. Nor does the selection of the sanction of issue exclusion seem inappropriate under the circumstances. Certainly, it was not an abuse of discretion.

We have considered Nike's other arguments and find them not persuasive.

## CONCLUSION

Because the district court properly granted summary judgment of non-infringement and did not abuse its discretion in precluding Nike from pursuing a claim of infringement under the doctrine of equivalents, the decisions of the district court are affirmed.

*AFFIRMED.*