AMERANTH, INC., Plaintiff,

v.

PAPA JOHN'S USA, INC., Defendant.

Case No. 12–CV–729 JLS (NLS).

United States District Court,
S.D. California.

March 26, 2013.

Ethan Mahoney Watts, Watts Law Offices, William J. Caldarelli, Caldarelli Hejmanowski & Page LLP, Michael D. Fabiano, Fabiano Law Firm, P.C., San Diego, CA, John William Osborne, Osborne Law LLC, Cortlandt Manor, NY, for Plaintiff.

Dan Duncan Davison, Dustin Mauck, Marc L. Delflache, Fulbright & Jaworski, LLP, Dallas, TX, Richard S. Zembek, Fulbright & Jaworski, LLP, Houston, TX, William J. Caldarelli, Caldarelli Hejmanowski & Page LLP, San Diego, CA, Aaron D. Gopen, John Anthony O'Malley, Ful-

bright & Jaworski, LLP, Los Angeles, CA, for Defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

### (ECF No. 27)

JANIS L. SAMMARTINO, District Judge.

Presently before the Court is Defendant Papa John's USA, Inc.'s ("Papa John's") motion for summary judgment. (MSJ, ECF No. 27.) Also before the Court are the parties' respective oppositions and replies. (Opp. to MSJ, ECF No. 42; Rep. in Supp., ECF No. 48.) Both parties have also filed numerous exhibits and requests for judicial notice. (ECF Nos. 27–2, 30, 42–4, 43, 47.) The Court heard oral argument on Thursday, February 28, 2013, and the matter was thereafter taken under submission. Having considered the parties' arguments and the law, the Court **DENIES** Papa John's motion for summary judgment.

## BACKGROUND

### I. Factual and Procedural Background

This action is part of a consolidated action for patent infringement by Plaintiff Ameranth, Inc. ("Ameranth") against various Defendants in thirty-one related cases. In the present case, Ameranth has asserted three patents-in-suit, U.S. Patent Nos. 6,384,850 (the '850 patent), 6,871,325 (the '325 patent) and 8,146,077 (the '077 patent, and collectively, the "Asserted Patents"), against Papa John's.[1] Ameranth asserts claims of direct infringement, inducing infringement, and contributory infringement

against Papa John's for each of the three Asserted Patents.

The Asserted Patents claim an information management and synchronization software system relating to the placement of orders by consumers over the internet through the use of wireless handheld devices. Ameranth alleges that Papa John's proprietary on-line and mobile food ordering software system, the Papa John's Ordering System, infringes the Asserted Patents.

In December 2011, Ameranth presented a first round of written discovery to Papa John's seeking non-public technical materials concerning the Papa John's Ordering System. (ECF No. 42–3 ¶ 2.) Papa John's allegedly objected to the requests and refused to produce responsive documents until a protective order was in place. (Id.) As a result, Ameranth's January 23, 2012 Disclosure of Asserted Claims and Preliminary Infringement Contentions as to Papa John's ("Original PICs") was limited to publicly available information, and failed to identify where each element of each asserted claim is found in the accused instrumentalities. The parties then agreed that Ameranth would serve amended infringement contentions following Papa John's production of source code and technical documents as required by Patent Local Rule 3.4(a). (Joint Motion to Amend Scheduling Order, ECF No. 153.)

On March 26, 2012, Papa John's produced technical documents and source code files relating to Papa John's Ordering Systems. Ameranth subsequently served its Amended Claim Chart as to Papa

---

1. The '850 patent and the '325 patent were asserted in the lead case, *Ameranth v. Pizza Hut, Inc. et al,* Case No. 11–CV–1810 ("lead case" or "1810"). The '077 patent was later asserted in the present case, *Ameranth, Inc. v. Papa John's USA, Inc.,* Case No. 12–CV–729 ("present case" or "729"). In its August 6, 2012 Order, the Court severed and consolidat-

ed the claims against each Defendant in the lead case and consolidated those claims with the individual actions brought separately by Ameranth against each Defendant. (ECF No. 260.) In its October 4, 2012 Order, the Court consolidated the thirty-one related cases for pretrial purposes up to and including claim construction. (ECF No. 279.)

John's ("Amended PICs") on June 28, 2012. On August 13, 2012, Papa John's filed the instant motion for summary judgment, alleging that Ameranth failed to identify necessary elements of the asserted claims. (ECF No. 27–1 at 10–11.)

## II. The Asserted Patents [2]

### A. The '850 Patent—Information Management and Synchronous Communications System with Menu Generation

The '850 Patent covers an information management and synchronous communications system and method for generating computerized menus for use on specialized displays. The invention allows for the more efficient use of handheld wireless devices in the restaurant and hospitality fields by creating an integrated solution that formats data for smaller displays and allows for synchronization of data.

Here, Ameranth has only asserted claims 12–16 of the '850 Patent. These claims, also described as "synchronization claims," cover the synchronization of "hospitality applications and data" between a central database, a wireless handheld computing device, a web server, and a web page. These claims generally cover an interface that allows the integration of outside applications and a "communications control module" that acts as an interface between the hospitality applications and other communications protocols.

The asserted claims of the '850 Patent share the following elements: (1) a central database containing hospitality applications and data; (2) at least one wireless handheld computing device on which hospitality applications and data are stored; (3) at least one web server on which hospitality applications and data are stored; (4) at least one web page on which hospitality application and data are stored; (5) an application program interface; and (6) a communications control module. Claim 12 claims a system with the above elements wherein applications and data are synchronized between the central data base, at least one wireless handheld computing device, at least one web server, and at least one web page; and wherein the application program interface allows integration of outside applications with the hospitality applications; and wherein the communications control module interfaces between the hospitality applications and any other communications protocols. Claim 13 claims the system in Claim 12 wherein the communications control module provides a single point of entry for all applications and for synchronization. Claim 14 claims the system in Claim 13 wherein information entered on the Web page is automatically communicated to the central database and the wireless handheld computing device. Claim 15 also claims the system in Claim 13 but wherein the information entered on the wireless handheld computing device is automatically communicated to the central database and the Web page. Finally, Claim 16 claims the system in Claim 12 wherein the applications and data are synchronized by digital data transmission between the central database, wireless handheld computing device, Web server, and Web page.

### B. The '325 Patent—Information Management and Synchronous Communications System with Menu Generation

The '325 Patent also covers an information management and synchronous communications system and method for generating computerized menus for use on specialized displays. Here, Ameranth has asserted claims 11–15 of the '325 Patent. These claims are also synchronization

---

**2.** This section is based on the published Patents. (*See generally* ECF Nos. 27–6, 27–7.)

claims. The asserted claims of both the '325 and '850 Patents share the following elements: (1) a central database containing hospitality applications and data; (2) at least one wireless handheld computing device on which hospitality applications and data are stored; (3) at least one Web server on which hospitality applications and data are stored; (4) at least one Web page on which hospitality application and data are stored; (5) an application program interface; and (6) a communications control module.

Claim 11 claims the same system described above, but specifies that the synchronized data relates to orders. Claims 12 and 13 also claim the system, but specify that the data relates to waitlists and reservations, respectively. Claim 14 claims the systems of Claims 11, 12, and 13, but specify that the data is sent to a receiver at a valet parking base station. Claim 15 also claims the systems of Claims 11, 12, and 13, but specify that the data is sent to a wireless paging device.

### C. The '077 Patent—Information Management and Synchronous Communications System with Menu Generation, and Handwriting and Voice Modification of Orders

The '077 Patent also covers an information management and synchronous communications system and method for generating computerized menus for use on specialized displays, but with the added ability to manually modify the entries with handwriting or voice. Generally, the '077 Patent expands upon the prior two patents and also covers the incorporation of a manual interface to allow consumers to manually input a selection.

Here, Ameranth has not specified which claims of the '077 Patent it is asserting.

Further, Papa John's does not raise any specific issues with the claims of the '077 Patent in its motion for summary judgment. Accordingly, it is unnecessary to analyze the specific claims of the '077 Patent at this time.

### III. The Accused Product—Papa John's Ordering System [3]

Ameranth has accused Papa John's proprietary online and mobile computerized ordering system, the Papa John's Ordering System, of infringement. Papa John's Ordering System allegedly runs from secure private data centers and Papa John's allegedly maintains tight confidentiality controls over the system source code and other technical data. Ameranth alleges that the Papa John's Ordering system allows for online and mobile ordering, integrates with programs and applications such as Facebook, Twitter, Groupon, and YouTube, and allows for synchronization of data between wireless handheld devices such as cell phones, a database, a Web server, and a Web page.

Ameranth further alleges that Papa John's has actively induced infringement by its consumers and franchise operators, and contributorily infringed by selling or offering to sell infringing components.

### LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This standard also applies to patent cases. *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646

---

**3.** This section is based on Ameranth's Second Amended Complaint. (*See generally* 1810, ECF No. 106.)

(Fed.Cir.1994) ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23, 106 S.Ct. 2548. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In the context of patent litigation, "[i]nfringement is assessed by comparing the accused device to the claims; the accused device infringes if it incorporates every limitation, either literally or under the doctrine of equivalents. If, however, even one claim limitation is missing or not met, there is no literal infringement." *MicroStrategy, Inc. v. Bus. Objects, S.A.,* 429 F.3d 1344, 1352 (Fed.Cir.2005) (internal quotations and citations omitted). "Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial." *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed.Cir. 2001). Accordingly, when deciding a motion for summary judgment, it is typically necessary for the district court to construe the scope of the claims and perform an infringement analysis. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1351 (Fed.Cir.2001) ("It is well settled that an infringement analysis involves two steps: the claim scope is first determined, and then the properly construed claim is compared with the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent."); *see also Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 996 n. 7 (Fed.Cir.1995) ("A claim must be construed before determining its validity just as it is first construed before deciding infringement.").

## ANALYSIS

### I. Identification of a Direct Infringer

#### A. *Testing by Papa John's*

Generally, direct infringement requires a party to make, use, offer to sell, sell, or

import a patented invention. 35 U.S.C. § 271(a). The Federal Circuit has held that, to "use" a patented system as required under 271(a) for purposes of direct infringement,[4] a party must put the invention into service. *Centillion Data Sys., LLC v. Qwest Communs. Int'l,* 631 F.3d 1279, 1284 (Fed.Cir.2011). In other words, the direct infringer "must put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Id.* (citing *NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282, 1317 (Fed.Cir.2005)).

■ Papa John's argues that Ameranth fails to identify an actor that uses all portions of the claimed invention or combines all the elements. Here, the asserted claims of the '850 and '325 patents require "at least one wireless handheld computing device on which hospitality applications and data are stored." (*See* ECF Nos. 27–6, 27–7.) Papa John's argues that this claim language requires multiple actors because such handheld devices are in Papa John's customers' possession or control, whereas the other elements, such as a web server, are in Papa John's possession or control. (ECF No. 27–1 at 13–14.) In response, Ameranth argues that Papa John's may still be liable for direct infringement because its own employees or consultants have engaged in mobile device testing. (ECF No. 42 at 23–24.)

The Court finds that Ameranth has carried its burden to establish a genuine issue of fact as to whether Papa John's is a direct infringer because it is in control of all elements of the claimed system when it tests its system on new or existing mobile devices and mobile software. Ameranth's contentions are supported by several emails between employees of Brandt Information Services discussing the testing of Papa John's ordering system on several

devices, including a "BlackBerry device," an "Android device," an "iPod touch," and a "test iPod." (ECF No. 42–5, Exh. 4 at 13–15.) Ameranth has also provided a "Time Estimates" document which includes an "Internal Testing" section listing an iPhone, Palm Pre, Android, and Windows Mobile 6.5. (*Id.* at 16–17.) Accordingly, the Court **DENIES** Papa John's motion on this basis.

**B. Centillion**

In the alternative, Ameranth also argues that *Centillion* is distinguishable because it involved a system that could only become fully operational through the activities of an individual consumer. (ECF No. 42 at 24–25.) There, the accused system incorporated a "front-end" system maintained by consumers on their personal computers that would allow the consumers to access data processed by a "back-end" system maintained by the service provider. *Centillion Data Sys.,* 631 F.3d at 1281. The patent-in-suit included an element requiring "personal computer data processing means adapted to perform additional processing." *Id.* The Federal Circuit held that the consumers, rather than the service provider, were the "users" of the patented invention because they invoked the back end processing services and also performed the additional front end processing on an adopted device. *Id.* at 1285. In contrast, the service provider did not use the system because it only provided the software for customers to install and never put into service the personal computer data processing means. *Id.* at 1286.

Ameranth argues that its patents-in-suit, in contrast to the patent in *Centillion,* do not require a "processing means" that has to be "put into service." Therefore, Amer-

---

**4.** The Court notes that Papa John's does not discuss Ameranth's indirect infringement claims, and moves for summary judgment on this basis only on the direct infringement claim.

anth contends that "use" of the system here is not restricted to the front-end consumer but the back-end provider who controls the synchronization of data. Ameranth further contends that the beneficial use of the system, synchronization of data and applications, is driven primarily by the server rather than the front end, and that the benefits therefore accrue to the provider, such as Papa John's, rather than individual consumers.

To the extent that Ameranth argues that *Centillion* is distinguishable, the Court finds that further factual discovery is required to determine the scope and use of the accused system. Accordingly, the Court declines to consider this line of argument at this time.

## II. Sufficiency of Preliminary Infringement Contentions

■ Local Patent Rule 3.1(c) requires a party claiming patent infringement to serve PICs including "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3.1. Thus, the parties are obligated to state with specificity the theories upon which they plan to rely, and to do so early in the litigation. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355 (Fed.Cir. 2006).

■ Accordingly, the PICs must contain "sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves," but need not be so detailed as to transform the PICs into a "forum for litigation of the substantive issues." *Network Caching Tech., LLC v. Novell, Inc.*, No. C–01–2079, 2003 WL 21699799, at *5, 2003 U.S. Dist. LEXIS 9881, at *13 (N.D.Cal. Mar. 21, 2003); *see also Shared Memory Graphics LLC v. Apple, Inc.*, 812 F.Supp.2d 1022, 1025 (N.D.Cal.2010) ("[A]ll courts agree

that the degree of specificity under Local Rule 3–1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'") (internal quotations omitted). "[P]laintiff is required to include in its infringement contentions all facts known to it, including those discovered in its pre-filing inquiry." *Shared Memory Graphics*, 812 F.Supp.2d at 1024. This includes any "publicly available information which, if utilized, would ... provide[ ] more information to Defendants" of plaintiff's infringement claims. *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F.Supp.2d 703, 709 (E.D.Tex.2008).

With these considerations in mind, the Court now turns to each allegedly missing element. Papa John's argues that Ameranth's Amended PICs fail to specifically identify six elements of the asserted claims: (1) "a central database containing hospitality applications and data"; (2) "at least one wireless handheld computing device on which hospitality applications and data are stored"; (3) "at least one Web server on which hospitality applications and data are stored"; (4) "at least one Web page on which hospitality applications and data are stored"; (5) "an application program interface"; and (6) "a communications control module." Having independently reviewed Ameranth's Amended PICs, the Court addresses each element in turn.

### A. A central database containing hospitality applications and data

■ Papa John's contends that Ameranth's Amended PICs fail to identify "a central database containing hospitality applications and data." (ECF No. 27–1 at 14–15). Specifically, Papa John's contends that Ameranth has failed to identify a central database or hospitality applications that are allegedly stored in the database.

Ameranth's Amended PICs cite to various excerpts from Papa John's webpages that refer to "computer databases" and "computer servers." (ECF No. 45, Exhibit A at 6–10.) Both parties also agree that Ameranth has identified at least two different databases: a database described in Papa John's Privacy Policy and an Oracle 11 G Database. (ECF No. 42 at 17; ECF No. 48 at 7.) Ameranth has further provided an expert declaration that identifies the Oracle database as a relational database management system and states that "Papa John's Ordering System uses a central database containing hospital applications and data, such as menus, customer order information, food ordering applications, restaurant locators and frequency/favorite applications." (O'Hanlon Decl., ECF No. 42–2 at 3.) However, Papa John's contends that Ameranth has failed to identify or provide any factual support for the presence of hospitality applications in either database. (ECF No. 48 at 7.)

Here, the Court finds that the Amended PICs set forth with sufficient specificity that Papa John's system practiced this element. Ameranth has used publicly available information, including excerpts of Papa John's web pages and promotional materials, to point to the existence of a central database. Further, Ameranth's expert has specified "menus, customer order information, food ordering applications, restaurant locators, and frequency/favorite applications" as hospitality applications from Papa John's technical documents. (O'Hanlon Decl., ECF No. 42–2 at 3.) Papa John's arguments that Ameranth has not identified "hospitality applications" turns the issue into one of claim construction rather than sufficiency of the PICs, and the Court declines to grant summary judgment on this basis.

### B. At least one wireless handheld computing device on which hospitality applications and data are stored

■ Papa John's contends that Ameranth has failed to identify "hospitality applications" because the claim requires multiple applications on a single handheld device, and only one such application exists for any such given device in the accused system. (ECF No. 27–1 at 15.) In making this argument, Papa John's appears to define "application" as an iPhone or Android application—in other words, the singular software program that runs on each mobile operating system. (ECF No. 48 at 7–8.)

In its response, Ameranth proposes the following definition for hospitality applications: "one or more application software programs enabled to present information to a user via a user interface regarding reservations, frequency, ticketing, wait lists, food/drink ordering, payment processing or other services provided in the hospitality industry." (ECF No. 42 at 18.) Ameranth's expert declaration also identifies "access ordering, restaurant locator, [and] payment applications, etc., provided by Papa John's." (O'Hanlon Decl., ECF No. 42–2 at 4.)

The Court finds that the parties' arguments, to the extent that they are based on the definition of claim terms prior to claim construction, are premature. The parties' arguments depend on claim construction rather than the specificity of the PICs Accordingly, the Court declines to grant summary judgment on this basis.

### C. At least one Web server on which hospitality applications and data are stored

■ Papa John's contends that Ameranth has failed to identify a particular web server or any specific hospitality applications stored on said server. (ECF No. 27–

1 at 15–16.) Papa John's again argues that Ameranth has failed to identify specific "hospitality applications," but does not discuss how that term should be construed. In response, Ameranth contends that a technical specification of Papa John's Enhanced User Interface, as cited in the Amended PICs, specifically references and graphically depicts a webserver being used to operate the Papa John's Ordering system. (ECF No. 42 at 19.) Ameranth further provides an expert declaration stating that "Papa John's technical documents and source code reveal that Papa John's uses a web server to generate web pages, and that the servers contain the hospitality data and applications discussed above that are viewable over the internet." (ECF No. 42–2 at 4.)

Here, the Court finds that the Amended PICs set forth with sufficient specificity that Papa John's system practiced this element. Ameranth has used publicly available information, including excerpts of Papa John's web pages and promotional materials, to point to the existence of a central database. Further, Ameranth's expert has specified "menus, customer order information, food ordering applications, restaurant locators, and frequency/favorite applications" as hospitality applications from Papa John's technical documents. (O'Hanlon Decl., ECF No. 42–2 at 3.) As stated above, Papa John's arguments that Ameranth has not identified "hospitality applications" turns the issue into one of claim construction rather than sufficiency of the PICs Accordingly, the Court declines to grant summary judgment on this basis.

**D.  At least one Web page on which hospitality applications and data are stored**

■ For the claim "at least one Web page on which hospitality applications and data are stored," Papa John's repeats its contention that Ameranth has failed to

identify the hospitality applications and data with any specificity. (ECF No. 27–1 at 16.) In response, Ameranth has provided several screen shots of specific web pages of Papa John's website, including references to "Web ordering" and "Mobile Ordering." (ECF No. 42 at 20.) Ameranth's expert also states in his declaration that "Papa John's Ordering system generates a conventional website and a mobile site, consisting of web pages on which the type of hospitality data and applications discussed above are stored." (ECF No. 42–2 at 4.)

As stated above, Papa John's arguments that Ameranth has not identified "hospitality applications" turns the issue into one of claim construction rather than sufficiency of the PICs. Further, Ameranth has used publicly available information, including web pages from Papa John's website, to identify several hospitality functions. Accordingly, the Court declines to grant summary judgment on this basis.

**E.  An application program interface**

■ Papa John's contends that Ameranth has failed to identify an "application program interface" because its references are "vague." (ECF No. 27–1 at 16.) In response, Ameranth references the integration of Papa John's Ordering System with programs such as Facebook, Twitter, Groupon, YouTube, and Mapquest. (ECF No. 42 at 21.) Ameranth's expert also references Papa John's source code that allows integration with software programs including "Mapquest, payment processing, Exact Target email marketing, and ... Facebook.com." (ECF No. 42–2 at 5.) Further, an independent review of Papa John's source code reveals lines of code referencing "mapquest api" and "Java Servlet API." (ECF No. 42–2 at 5; NOL, Exh. 20.) Papa John's contends that the "application program interface" must en-

able integration with plural outside applications, and that the purported application program interface only enables integration with a single application, but provides no further support for this argument. (ECF No. 48 at 9.)

Once again, the parties' arguments attempt to turn the issue into one of claim construction rather than sufficiency of the PICs. Accordingly, the Court declines to grant summary judgment based on the definition of a claim term that has yet to be construed by the Court.

### F. A communications control module

 Papa John's contends that Ameranth has failed to identify "a communications control module." (ECF No. 27–1 at 16.) In response, Ameranth provides its expert's declaration stating that "Papa John's Ordering System contains a communications control module, a software module that enables communication, exchange of data and interfacing between the various components and applications of the system through communications protocols." (ECF No. 42–2 at 5.) Ameranth's expert further declares that a person skilled in the art of software development reviewing the referenced source code would be able to identify the specific elements, including the communications control module. (ECF No. 42–2 at 6.)

Although the Court is wary of the conclusory nature of Ameranth's expert's declaration, the Court also notes that neither party has adequately briefed the existence or non-existence of this element. Accordingly, the Court declines to grant summary judgment on this basis.

### CONCLUSION

For the reasons stated above, the Court **DENIES WITHOUT PREJUDICE** Papa John's motion for summary judgment. To the extent that Papa John's has based its motion on the definition of claim terms,

Papa John's may renew its motion after claim construction and further discovery.