REYNA, Circuit Judge,
concurring-in-part and dissenting-in-part.
I agree with the majority’s opinion regarding the construction of “IDC connector” in the '140 and '771 patents and “annular gasket” in the '055 patent. I therefore concur in the majority’s resolution of the issues regarding those patents. I disagree, however, with the majority’s interpretation of the terms “substantially ellipsoidal inner profile” and “generally spherical outer profile” in the '896 patent. In my view, the stipulated constructions must apply to the full inner and outer profiles (or surfaces), not simply any mere part of those profiles. I therefore dissent to the majority’s outcome concerning the '896 patent.
The majority’s reversal of the district court’s grant of summary judgment of non-infringement under the '896 patent was premised on its erroneous conclusion that the use of the term “profile” in the claims referred only to “a portion” of the recited profiles. Under the majority’s view, there are a limitless number of inner and outer “profiles” envisioned by the claims and, so long as one of those innumerable inner profiles meets the “substantially ellipsoidal” limitation and one of the innumerable outer profiles meets the “generally spherical” limitation, the claims have been infringed. I believe this is an improper view of the scope of the claims because it is inconsistent with the context provided by the claim language, the plain meaning of the term “profile,” and GE’s disclaimer during prosecution.
The claim element with the disputed terms from the '896 patent recites the following:
a substantially dome-shaped refractive optical element covering the LED, the optical element having a generally spherical outer profile and substantially ellipsoidal inner profile to increase the primary viewing angle of the LED to provide an altered viewing angle that is greater than the primary viewing angle;
'896 patent col. 8 11. 30-35. As a preliminary matter, this element refers to the entirety of the “substantially dome-shaped refractive optical element.” That feature of the claimed invention is described in association with limitations regarding its outer and inner profile. In context, the most consistent reading of the profile terms is that they serve to describe the overall geometric features of the claimed “refractive optical element.” See Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed.Cir.2005) (en banc) (“[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms. To begin with, the context in which a term is used in the asserted claim can be highly instructive.”). Not, as the majority’s construction allows, merely any portion given that no further description is provided for the other portions, no matter how insubstantial or insignificant, of the outer and inner profiles of that “refractive optical element.”
The context supplied by the claim language is also consistent with the plain meaning of the word “profile.” While “profile” has different meanings in different contexts, the definition applicable to the present case is “an outline of an object, as a molding, formed on a vertical plane passed through the object at right angles to one of its principal horizontal dimensions.” [1] Random House Webster’s College Dictionary (2d ed.1999). Indeed, the *1316 patent describes and depicts exactly such an outline on a vertical plane in connection with cross-sectional views of the disclosed optical element. The patent explains, consistent with the dictionary definition, that the refractive domes “can be an integrally molded plastic or glass piece, i.e., a one-piece unit.” '896 patent col. 6 11. 21-23 (emphasis added). The patent further describes Figures 6 and 7 as the “cross-sectional view of an optical element ... shown in cross-section taken through the center of the optical element in the x-y plane” and “the cross-sectional view of FIG. 6 shown in side elevation,” respectively. Id., col. 3,11. 33-37. These images depict the outlines of the optical elements with two refractive domes as follows:
[[Image here]]
Id., figs. 6 & 7.
The specification explains that the profiles describe the surfaces of the dome-shaped optical elements. The depiction in Figure 7 is described as follows: “For the depicted optical element each dome 140 has a spherical outer profile, or outer surface, 148 and an ellipsoidal inner profile, or inner surface 152.” Id., col. 3, 11. 33-37 (emphasis added). During oral argument, GE’s counsel referred to Figure 7 and the disclosure in the specification by stating that “[i]f you look at Figure 7 of the '896 patent, that is clearly showing you — which by the way is described as a substantially ellipsoidal inner profile — if you look at that profile, it is very clearly not ellipsoidal across its entire profile.” Hr’g at 3:18-3:33 (http://oralarguments.cafc.uscourts. gov/default.aspx?fl=2013-1267.mp3). Notwithstanding the fact that the specification does not describe the ellipsoidal inner profile depicted in Figure 7 as substantially ellipsoidal, the statement from GE’s counsel is revealing because it (accurately) equates the word “profile” with the “entire profile.” This is relevant because it further indicates that the disclosed “profile” implicitly refers to the entire outline of the depicted cross-section. Yet, GE’s arguments deviate from this plain meaning *1317 regarding the entire profile by seeking a construction for merely a partial profile, and the majority adopted this view by recasting “profile” to mean “a portion of’ the profile. This departs from the language of the claims by importing an extraneous adjectival modifier into the claim, which, in effect, impermissibly rewrites the patent’s claims. See Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 647 (Fed.Cir.1994) (rejecting the patentee’s proposed claim construction that would, “in effect, rewrite its patent claims to suit its needs in this litigation”).
There is no dispute that the specification wrongly describes the shape of the inner profile depicted in Figure 7. The specification says the depicted inner profile is “ellipsoidal” when the full profile clearly is not. The majority resolved this flaw in favor of the patentee by parsing the claimed profiles to any portion thereof. While I believe that express ambiguity in a patent document that affects the scope of the claims should typically be resolved in favor of the public over the patentee, the ambiguity here is most directly resolved from the amendments and remarks made by the patentee during prosecution.
The majority states that “there are no statements during prosecution or in the specification that indicate the patentee’s intent to limit his claim to an entire inner profile that is substantially ellipsoidal.” Maj. Op. at 1311. This is not so. The profile limitations of the present dispute were added to the claims during prosecution in order to overcome a rejection that relied, in part, on U.S. Pat. No. 6,566,824 (“the '824 patent”). The amendment changed the disputed element as follows:
a substantially dome-shaped refractive optical element covering the LED, the optical element being configured having a generally spherical outer profile and substantially ellipsoidal inner profile to increase the primary viewing angle of the LED to provide an altered viewing angle that is greater than the primary viewing angle;
Claim Amendment in File History of Pat. Appl. No. 12/105,963 (June 29, 2010) at 4. In short, the claim went from having no limitations regarding the geometry of the optical element to the specifically recited geometries for the inner and outer profiles.
The amendment was made in order to overcome the specific geometries of the optical elements expressly disclosed in the prior art. In particular, the amendment sought to overcome the disclosure in Figure 14 of the '824 patent, which depicts the following optical element with inner and outer surfaces referred to as a “Bugeye®” lens:
*1318 [[Image here]]
'824 patent, Fig. 14, col. 2 ll. 60-62 (“FIG. 14 is a cross-sectional view of one of the BugEyeTM lenses of FIG. 13 showing a cone of light emanating therefrom”). In arguing that the amendment overcame the disclosure of the '824 patent, the patentee stated that:
[The '824 patent] displays various domes in Figures 10, 12, and 14. However, neither of the domes depicted in [the '824 patent] is spherical in its outer profile and elliptical in its inner profile. In fact, Figure 1J¡, could, arguably, be interpreted as the inverse of the presently claimed invention.
Remarks in File History of Pat. Appl. No. 12/105,963 (June 29, 2010) at 6 (emphasis added).
The only reasonable interpretation of the patentee’s argument during prosecution is that it was referring to the full profiles depicted in Figure 14 of the '824 patent. That image depicts a lens that has a substantially ellipsoidal outer profile and a generally spherical inner profile. But, this is only true if one considers the entirety of the depicted inner profile and the entirety of the depicted outer profile. If one were to consider any and all subparts of the depicted profiles, as the majority has done, then it is readily apparent there are portions of the outer profile that have a generally spherical curvature and portions of the inner profile that are substantially ellipsoidal that would read on the amended claim.[2] Accordingly, such an in *1319 terpretation would negate the patentee’s statement that “Figure 14 could, arguably, be interpreted as the inverse of the presently claimed invention.” Since the patentee’s argument in support of patentability relies on an interpretation that governs the full profile, that same interpretation must also apply here. See TorPharm, Inc. v. Ranbaxy Pharms., Inc., 336 F.3d 1322, 1329 (Fed.Cir.2003) (“A patentee of course may not recapture during litigation subject matter that was ultimately rejected as unpatentable during prosecution, nor may the patentee adopt a position contrary to that adopted before the PTO and expect to be believed.”); Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir.1995) (“Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.”). To do otherwise, as the majority has done here, allows the patentee to recapture surrendered claim scope and ensnare the prior art. See, e.g., Omega Eng’g, Inc., v. Raytek Corp., 334 F.3d 1314, 1323 (Fed.Cir.2003) (“prosecution disclaimer is well established in Supreme Court precedent, precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution”). This further demonstrates the majority’s error.
Finally, the majority’s construction allows for illogical results. The claim terms in dispute are a “generally spherical outer profile” and “substantially ellipsoidal inner profile.” To me, this language means that there is an outer profile that is generally spherical and an inner profile that is substantially ellipsoidal. By contrast, the majority’s construction allows the claims to cover profiles that are, when viewed in their entirety, neither generally spherical nor substantially elliptical. For instance, the majority’s construction considers the following to represent profiles of three-dimensional surfaces that are “generally spherical” and “substantially ellipsoidal,” respectively:
[[Image here]]
*1320 [[Image here]]
In my view, a more natural interpretation of the foregoing profiles is that they depict a structure that is generally cubic and a structure that is substantially conical, respectively. That the majority’s construction allows for such a radical departure from the plain import of the claim language further demonstrates the flaw in that interpretation. See Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1336 (Fed.Cir.2001) (rejecting claim construction that is “illogical and does not accord with the plain import of the claim language”).
The parties stipulated to constructions for the disputed profile terms. They agreed that “generally spherical outer profile” meant “an outer three-dimensional surface where the points on the surface are generally equidistant from a center point” and that “substantially elliptical inner profile” meant “an inner three-dimensional surface where the sum of the distances from two focal points and the points on the inner surface is substantially constant.” As the majority recognized, the stipulation did not resolve the parties’ dispute as to whether the claim limitations applied to the full profile or simply a portion of the profile. Based on the foregoing analysis, I conclude that the patent’s use of the term “profile” means the full outline created by a cross section of the entire “substantially dome-shaped refractive optical element.” That is, the claim addresses the entire inner and outer profiles. Under that interpretation, the Appellant has not submitted adequate evidence to raise a genuine issue of fact regarding infringement and I would therefore affirm the district court’s grant of summary judgment of noninfringement of the '896 patent.

. “[W]e are free to consult dictionaries regardless of whether they have been offered by a party in evidence or not.” Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 320 F.3d 1339, 1346 (Fed.Cir.2003)

. This largely derives from the fact that, similar to what Appellant has done in attempting to demonstrate infringement, it is easy to draw a circle that overlaps with a portion of the outer profile and an ellipse that overlaps with a portion of the inner profile of the lens depicted in Figure 14 of the '824 patent: